MADER (Pauline), Plaintiff and Respondent, vs. MADER (Richard), Defendant and Appellant: MADER (Joseph Edward), Interpleaded Defendant and Respondent.

*November 9—December 5, 1950.*

*L. A. Willenson* of Milwaukee, for the appellant.

*Alvin M. Strnad* of Milwaukee, for the respondent.

*Norman J. Baker* of Milwaukee, guardian *ad litem,* for Joseph Edward Mader.

FRITZ, C. J.    In answer to allegations in plaintiff's complaint that defendant was guilty of a course of cruel and in-

human treatment of plaintiff, defendant denied said allegations and denied that the child born on November 12, 1948, is the issue of the marriage of plaintiff and defendant on July 17, 1948; and defendant alleged that the child is a child of plaintiff and a man other than defendant. As a counterclaim defendant alleged that the marriage was induced by plaintiff falsely and fraudulently representing to defendant that he had caused her to become pregnant and that he would have to marry her to protect himself from prosecution; that at the time she made such representations she knew defendant was not in fact the person who caused her to become pregnant and that she was then pregnant with a child by another man; that defendant then had no means of determining whether such representations were true or false, and solely because of such representations he consented to marry plaintiff; that the marriage has not been confirmed by any acts of the defendant after discovery of the fraud; that the child born on November 12, 1948, was named Joseph Edward Mader; that plaintiff has on several occasions admitted to him and others that the child is not his; that immediately after he discovered he was not the father of the child and discovered the fraud upon which the marriage was entered into, he ceased having any relationship with plaintiff and the parties have separated and now live apart; and therefore he requests judgment dismissing the complaint and adjudging that said marriage between the parties be declared null and void; and that said child shall be declared not to be his and that he be relieved from liability for its support. Under sec. 328.39 (1), Stats., the child was interpleaded as a defendant, and Norman J. Baker was appointed and appeared as guardian *ad litem* for the child; and against him defendant requested judgment that he be relieved from liability for the child's support.

In answer to defendant's counterclaim plaintiff alleged that if the marriage of plaintiff and defendant was induced by fraud and deceit of plaintiff and defendant is not the father

of said child, then defendant did for a long period of time after he knew or should have known of the fraud of the plaintiff, if any, hold out and represent and admit publicly that plaintiff was his lawfully wedded wife, and that he was the father of the child then being borne by her, and is now estopped from denying the paternity of the child. Judgment of an absolute divorce was granted on findings that the child, Joseph Edward Mader, was the issue of said marriage; and that defendant has been guilty of a course of extreme cruelty by implying that the plaintiff's conduct has been improper and immoral, and by frequenting public places with other women in disregard of the feelings of his wife.

Defendant contends the court's finding that the child born to plaintiff while she was the wife of defendant was his is contrary to any reasonable doubt, and that the evidence shows beyond all reasonable doubt that the child could not be his child. Defendant's contentions cannot be sustained. In determining that issue there are applicable the provisions in sec. 328.39 (1), Stats.,—

"Whenever it is established in an action or proceeding that a child was born to a woman while she was the lawful wife of a specified man, any party asserting the illegitimacy of the child in such action or proceeding shall have the burden of proving beyond all reasonable doubt that the husband was not the father of the child. In all such actions or proceedings the husband and the wife are competent to testify as witnesses to the facts."

Upon our review of the record it is clearly evident that no worthy purpose will be served here by an extended discussion of the testimony. As the learned circuit judge stated:

"The case presents an astounding picture of illicit, sexual conduct on the part of these two parties and we'll place a proper degree of responsibility for it all upon the defendant, Richard Mader. His disposition to indulge in those acts throughout those years appears convincingly. His moral sense was low. He is a big man and he even undertakes to

tell this court that the many sexual acts, illicit as they were during the years here involved in this inquiry, must be placed upon the responsibility of the plaintiff, Pauline, the woman in the case. He did his own share to accomplish whatever he did accomplish in that field of endeavor and he did it deliberately with the success the record shows over a period of years. An astounding picture of illicit, irresponsible conduct on the part of an American man."

It suffices to note that in relation to the intimate sexual relationship between plaintiff and defendant, which resulted in the birth of the child, she testified:

During 1947 we had sexual intercourse several times a week. I broke up with Richard (defendant) for a time. It was in 1947. At that time I started going out with one other fellow. I was going out with this other man in January, 1948. Not in February. Not in March. The breakup between me and Richard did not last very long. It was still in 1947 when I went back with him. In January, 1948, we had sexual intercourse two or three times a week. During February, 1948, we had intercourse at least two times a week, and during March, 1948, we had intercourse at least two times a week. My last menstrual period was the end of February, the beginning of March. After I was certain I was pregnant, Richard (defendant) and I planned on being married. After March, 1948, we discussed the date on which we expected the baby to be delivered. I gave the date as the first week in December. When he told me it would be born about Christmas, I said I thought it would be the first week in December. At the time I told Richard I was pregnant I did not know positively that I was. I told you that I had my period in February, and I told him I thought I was pregnant because of the fact I had not gotten my period in March. I did not have any sexual relationship with anyone besides Richard during the period of February or March, 1948.

Defendant testified:

The beginning of 1946 was the first time I had sexual relationship with Mrs. Mader. I had no relationship with her during the year 1947. The next time I had sexual relationship with Mrs. Mader was the latter part of March, 1948. I

next saw her one week after that. She told me she was going to have a baby. She was pregnant. I said, "Well, if it's the truth, I suppose I'll have to get married." I married her on July 17, 1948. Of my own free will. I had some discussion with her between that week in March when she told me she was pregnant and July 17th, we discussed it and we figured the child would arrive at about December 24th or 25th or later. I would not have married her if she had not been pregnant. The baby was born November 12, 1948.

On cross-examination by the guardian *ad litem* the defendant testified:

After she told me she was pregnant about the end of March, I said, "Well, if it's mine, I suppose we have got to be married." She said, "Yes, I've got to give this young fellow a name." Well, I figured it was my child and it was the decent thing to do. I didn't doubt her word. There were no times when the question of marriage was in the balance after that.

The physician who rendered prenatal care to plaintiff and attended the birth of the child testified that she first came to his office on March 16, 1948. There was evidence also that on April 22, 1948, at the office of the corporation counsel of Milwaukee county plaintiff signed a complaint in a paternity proceeding to have another man declared the father of the unborn child. The case was set for July 28, 1948. On July 17, 1948, plaintiff married defendant, and on July 28th she stated at the office of the corporation counsel that she had married and her husband did not know of the paternity proceedings, and she requested that the proceedings be dismissed. After the child was born on November 12, 1948, and defendant came home from deer hunting, he questioned plaintiff about the paternity of the child and just told her the child was not his. Plaintiff testified she did not say anything to him at the time, but he testified she admitted it was not his child. She testified he said he thought it would be better if they would get a divorce. He was not staying home any more, and

she went with him to an attorney whom he had selected for that purpose and who started this action on her behalf.

As the child in question was born to plaintiff while she was the lawful wife of defendant and he was her husband, the burden of proof was upon him, as the party who was asserting the illegitimacy of the child, of "proving beyond all reasonable doubt" that he "was not the father of the child." Sec. 328.39 (1), Stats. Although there were conflicts in the testimony of the parties, the determination as to the credibility and weight of the testimony of the respective parties was primarily within the province of the trial court, and as its findings and conclusions are not contrary to the clear preponderance of evidence, which the court could consider credible and sufficient to warrant its findings, including its conclusion that,—

"The testimony of the defendant, Richard Mader, is incredible and not accepted by the court, and that as to the conduct complained of by said defendant, the testimony of the plaintiff is accepted as credible,"

the judgment based on its findings and conclusions must be affirmed.

After defendant appealed from the judgment he was ordered by the circuit court to pay, and he has paid $250 to plaintiff's attorney, and $150 to the guardian *ad litem* of the interpleaded child, to enable them to appear on behalf of plaintiff and said child on defendant's appeal. Plaintiff shall have costs for printing her brief, and the guardian *ad litem* shall have costs for printing the brief for the child. Neither plaintiff nor the child shall have costs for attorney's fees on the appeal in addition to amounts already ordered by the circuit court.

*By the Court.*—Judgment affirmed with costs as stated in the opinion.